Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Kelly Pinn, on her own behalf,
and on behalf of all others similarly situated*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KELLY PINN, an individual, on her own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GLOBAL EXCHANGE VACATION CLUB, a California corporation, and GLOBAL EXCHANGE DEVELOPMENT CORP., a Nevada corporation, and DOES 1-10, inclusive,<br><br>Defendants. | **CLASS ACTION COMPLAINT FOR:**<br><br>**(1) VIOLATIONS OF THE TELEPHONE CONSUMER PRIVACY ACT, 47 U.S.C. § 227(c)(5) AND 47 C.F.R. § 64.1200(c); and**<br><br>**(2) VIOLATIONS OF THE TELEPHONE CONSUMER PRIVACY ACT, 47 U.S.C. § 227(c)(5) AND 47 C.F.R. § 64.1200(d).**<br><br>No. |

Plaintiff Kelly Pinn ("Pinn" or "Plaintiff") bring this class action complaint against Defendants Global Exchange Vacation Club and Global Exchange Development Corp., and Does 1 to 10 (hereinafter jointly referred to as "Defendants") to stop Defendants' practice of unsolicited telemarketing calls to telephone numbers listed on the national Do-No-Call Registry, using false outgoing telephone numbers ("spoofed" telephone numbers), and to obtain redress for all persons injured by this conduct. Plaintiff, for her class action complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

//

### Nature of the Case

1.      Plaintiff, individually and as proposed class representative for all others similarly situated, brings this action against Defendants for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") for unsolicited, "spoofed" telemarketing calls made by or on behalf of Defendants which deceptively market Defendants' services.

2.      Plaintiff, individually, and for class members, seeks an injunction and other equitable relief, and an award of statutory damages, and costs and reasonable attorneys' fees, to the members of the proposed classes.

### Parties

3.      Plaintiff Kelly Pinn is a resident of the United States. She is the subscriber of a residential telephone listed on the national Do Not Call list consistent with, on which she a series of unsolicited telephone solicitations from Defendants.

4.      Defendant Global Exchange Vacation Club ("GEVC") is a California corporation which registered 27405 Puerta Real, Suite 100, Mission Viejo, California 92691 as its address with the California Secretary of State. GEVC is a multi-location time-share plan with accommodations in locations worldwide. GEVC holds (and sells) various real estate interests including timeshares.

5.      Defendant Global Exchange Development Corp. ("GEDC") is a Nevada corporation which registered 30448 Rancho Viejo Road, Suite 150, San Juan Capistrano, California 92675 as its address with the California Secretary of State. GEDC manages GEVC, and uses telemarketing to market GEVC's timeshares.

6.      Plaintiffs are currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein under the fictitious names Does 1 through 10, inclusive, and therefore, sues such Defendants by such fictitious names. Plaintiffs will seek leave to amend this

complaint to allege the true names and capacities of said fictitiously named Defendants when their true names and capacities have been ascertained. Plaintiffs are informed and believe, and based thereon allege, that each of the fictitiously named Doe Defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiffs.

7.    Plaintiffs are informed and believe, and based thereon allege, that all defendants, including the fictitious Doe Defendants, were at all relevant times acting as actual agents, ostensible agents, conspirators, partners, alter egos, and/or joint venturers and employees of all other defendants, and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of their co-Defendants; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

8.    All Defendants, including GEVC, GEDC, and Does 1 through 10, are collectively referred to as "Defendants." Whenever this complaint refers to any act of Defendants or acts of GEVC and/or GEDC, the allegations shall be deemed to mean the act of those defendants named in the particular cause of action, and each of them, acting individually, jointly and severally, unless otherwise alleged.

**Jurisdiction and Venue**

9.    The Court has federal subject matter jurisdiction under 47 U.S.C. § 227. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740 (2012).

10.    This Court has personal jurisdiction over the Defendants under California Code of Civil Procedure section 410.10 because many of the acts alleged herein were committed and injury was incurred in California, because they conduct operations and/or sales in California, are registered to do business in California, and the acts alleged herein originated in or were directed to this District.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District and because a substantial part of the events giving rise to the claim occurred in this District.

## Common Allegations

### The Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227

12.     "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020).

13.     In 1991, Congress enacted the TCPA, in response to a growing number of consumer complaints regarding certain telemarketing practices. Congress found that "automated and prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from the nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2 (10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227. *See also Mims*, 565 U.S. at 371 ("The Act bans certain practices invasive of privacy").

14.     The TCPA (via its implementing FCC regulations) prohibit calls to any number that is registered with the National Do-Not-Call Registry. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). The TCPA provides a private right of action for damages and injunctive relief for such DNC violations. 47 U.S.C. § 227(c)(5).

15.     The National Do-Not-Call Registry allows residential telephone subscribers to register their telephone numbers with the Registry to indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing of the Registry "must be honored indefinitely or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

16.     All Defendants may be liable under the TCPA. The FCC's regulations

"generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013). *See also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) ("no cause to question" precept that "under federal common-law principles of agency, there is vicarious liability for TCPA violations"); *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 878 (9th Cir. 2014) (citing Restatement (Third) of Agency (2006) §§ 2.01, 2.03, 4.01 for proposition that vicarious liability under the TCPA "may be established by express authorization, implicit authorization, or ratification").

17.     The TCPA reflects Congress's intent to preserve the social norms that Americans answer calls to their telephone numbers. Abusive and deceptive robocalls like those used by CCCF are a scourge on modern society, and represent an increasing threat to American's continued use of the telephone system, which relies on the custom that people generally answer telephone calls to their telephone number. The TCPA's legislative history recognized the continued proliferation of telemarketing, left unchecked, would undermine that custom. "Unwanted calls are tainting the wanted ones and make us cringe at the thought of answering the telephone at night. . . .[I]t's a classic case of the bad apples spoiling the whole barrel." 137 Cong. Rec. H11,312 (daily ed. Nov. 26, 1991) (statement of Rep. Cooper); 137 Cong. Rec. H11,310 (daily ed. Nov. 26, 1991) (statement of Rep. Markey) (TCPA intended to protect privacy "before our home telephones become the receptacles of junk calls in the same way that junk mail often inundates our mailboxes").

18.     The situation has greatly worsened since the TCPA was first passed. In 2018, the House of Representatives received testimony that "approximately 40% of all calls on the landline network are unwanted robocalls," and that "the number of identified scam calls [is expected] to rise . . . to as high as 15% or 16% [.]" Do Not Call: Combating Robocalls and Caller ID Spoofing, Hearing Before H. Subcomm. On Digital Commerce and Consumer Protection, 115th Cong. 1 (testimony of Aaron Foss), https://energycommerce.house.gov/sites/ democrats.energycommerce.house.gov/files/documents/Testimony-Garr-DCCP-Hrg-on-Do-Not-Call-Combating-Robocalls-and-Caller-ID-Spoofing-2018-04-27.pdf; Do Not Call: Combating Robocalls and Caller ID Spoofing, Hearing Before H. Subcomm. On Digital Commerce and Consumer Protection, 115th Cong. 11 (testimony of Scott Hambuchen), https://energycommerce.house.gov/sites/ democrats.energycommerce.house.gov/files/documents/Testimony-Hambuchen-DCCP-Hrg-on-Do-Not-Call-Combating-Robocalls-and-Caller-ID-Spoofing-2018-04-27_1.pdf. Unless the situation improves, Americans will permanently acclimate to the telephone call as a fundamentally untrustworthy medium for free speech and stop answering unidentified telephone calls, frustrating the legislative intent behind the TCPA.

**Defendants' Illegal Telemarketing Calls**

19.     Defendants use telemarketers to solicit business from potential consumers across the country, including in California, to purchase real estate interests, including timeshares held by GEVC.

20.     On information and belief, GEVC is simply a corporate shell used to hold and maintain timeshare interests, and has few (if any) employees, and little other property, operations, or business functions. GEDC is responsible for operating and managing GEVC.

21.     On information and belief, GEDC employs, controls, and supplies the individual natural persons—the officers, employees, and agents—who actually

operate and control GEVC's day-to-day business. GEDC supplies the personnel who physically execute contracts for GEVC, operate the business of marketing to, registering and enrolling timeshare owners in GEVC's system, and perform any other aspect of GEVC's business that requires human involvement.

22.     Defendants market GEVC's timeshares through aggressive, illegal, outbound telemarketing campaigns. These telemarketing campaigns are conducted for GEVC and GEDC's benefit and on their behalf. GEVC and GEDC and its telemarketers initiate telemarketing calls from offshore call centers to telephone numbers on the Do-Not-Call registry, assess the recipient's interest in GEVC's timeshares, then transfer the recipients to call centers that use GEVC's name and are operated by Defendants' actual agents, ostensible agents, conspirators, partners, alter egos, and/or joint venturers to arrange in-person sales presentations at Defendants' offices. On information and belief, Defendants have granted their telemarketers access to their sales and enrollment systems and use of GEVC's name, and therefore granted the telemarketers their apparent authority.

23.     Defendants systemically fail to honor the national Do Not Call List. Defendants do not have express consent to call telephone users whose telephone number is on the Do Not Call List.

24.     Defendants use different trade names for different telemarketing campaigns. Defendants also use misleading or inaccurate caller identification information, including "spoofed" telephone numbers (that is, replacing the actual originating number displayed to recipients caller ID systems—which could be used to reliably identify the vendors' calls—with a falsified ostensible outgoing telephone number).[1]

---

[1]     According to the FTC, technological advancements (like Voice Over Internet Protocol (VoIP)) have increased the number of illegal telemarketing calls made to telephone numbers on the National Do Not Call Registry and allowed telemarketers to evade detection by "spoofing" the caller ID information that accompanies their calls:
            VoIP technology allows callers, including law-breakers, to make higher volume of calls inexpensively from anywhere in the world…Technological

25.     Defendants' use of different trade names helps them to attribute particular calls to specific telemarketing campaigns, but makes it difficult for consumers to do the same or even identify Defendants. Defendants' use of spoofing entices recipients to answer telephone calls that they would not otherwise answer, and makes it difficult to attribute particular calls to Defendants. These practices allow Defendants to evade accountability for their telemarketing activities, and make it difficult for call recipients to avoid or otherwise respond to Defendants' calls (for instance, asking to be placed on Defendants' own Do Not Call list). Call recipients are only able to avoid Defendants' unwanted calls if they risk missing *wanted* calls, and cannot identify which companies they have instructed not to call them.

26.     Nonetheless, Defendants made, and continues to make, these telemarketing calls to consumers without their consent. Defendants ratify the telemarketers' conduct by accepting transfers and referrals of call recipients and payments from the consumers who purchase GEVC's timeshares, and by paying commission to these telemarketers, despite knowing that the calls resulting in the enrollment violated the TCPA. Defendants have knowingly and actively accepted money that originated through illegal telemarketing calls, and paid and/or approved

developments also allow illegal telemarketers to easily fake the caller ID information that accompanies their calls, which allows them to conceal their identity from consumers and law enforcement. In 2017, reports of "neighborhood" caller ID spoofing, where the caller displays a caller ID number with the same area code and exchange as the called party, have also increased. Further, many telemarketers use automated dialing technology to make calls that deliver prerecorded messages (commonly referred to as "robocalls"), which allow violators to make very high volumes of illegal calls without significant expense. The net effect of these technological developments is that individuals and companies who do not care about complying with the Registry or other telemarketing laws are able to make more illegal telemarketing calls cheaply and in a manner that makes it difficult for the FTC and other law enforcement agencies to find them. Federal Trade Commission, Biennial Report to Congress, Under the Do Not Call Registry Fee Extension Act of 2007: The Operation of the National Do Not Call Registry During Fiscal Year 2016 and Fiscal Year 2017 3 (Dec. 2017), https://www.ftc.gov/reports/biennial-report-congress-under-do-not-call-registry-fee-extension-act-2007-operation.

payment of commissions to telemarketers for such calls.

27.     To the extent Defendants used any third-party telemarketers to make any calls to consumers, they were and are at all relevant times, acting as actual agents, ostensible agents, conspirators, partners and/or joint venturers and employees of Defendants, and the acts alleged herein occurred within the course and scope of said agency, employment, partnership, joint venture, conspiracy or enterprise, and with the express and/or implied permission, knowledge, consent, authorization and ratification of Defendants.

28.     Defendants operate, manage, monitor, and/or control these telemarketing campaigns through the data collected about the telemarketing campaigns, and the feedback Defendants give to the telemarketers (including, ultimately, the commissions Defendants pay to their telemarketers). Defendants are legally responsible for ensuring they and/or any third-party telemarketers complied with the TCPA, even if they themselves did not itself make the calls. Defendants are vicariously liable for their agents' TCPA violations. Defendants not only controlled the result of the work, but also the manner and means by which it was accomplished through interim instructions.

29.     There is no material distinction between telemarketing calls made by Defendants and/or by call centers who are technically third parties. The FCC's regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶13 (1995). The FCC reiterated this principle in 2013, when it explained that "a seller . . . may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 (2013). *See also Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016) ("no cause to question" precept

that "under federal common-law principles of agency, there is vicarious liability for TCPA violations"); *Gomez v. Campbell-Ewald Co*., 768 F.3d 871, 878 (9th Cir. 2014) (citing Restatement (Third) of Agency (2006) §§ 2.01, 2.03, 4.01 for proposition that vicarious liability under the TCPA "may be established by express authorization, implicit authorization, or ratification").

### Plaintiff's Individual Allegations

30.    Pinn's telephone number has been registered with the National Do-Not-Call Registry for over ten years. Pinn uses this telephone number for residential purposes. Pinn never provided her telephone number to Defendants or their agents for any purpose whatsoever as she never had a business relationship with them. Defendants and their agents did not otherwise obtain Pinn's prior express consent to make telemarketing calls to her telephone number. Pinn was not a business associate, customer, or other person having an established relationship with Defendants, Defendants did not call to collect an existing obligation, and Pinn did not request Defendants to call (and, indeed, she was not aware of Defendants prior to these calls). Defendants never had valid consent to call Pinn. *See* 47 C.F.R. § 64.1200(c)(2)(ii) (requiring "a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller").

31.    **Defendants' 2021 Calls:** On or about, June 21, 2021, Pinn received a call Defendants. Pinn's caller ID indicated the call was from (817) 997-6264. On information and belief, this number was spoofed and was not Defendants' telephone number. The caller indicated she was calling from Embassy Suites and offered Pinn a free vacation package in exchange for attending a presentation about Defendants' timeshares. The caller also identified Defendants' website as "globalexchangevacation.com."

32.    About ten minutes later, Pinn received a second call from Defendants to confirm Pinn would attend the presentation. Pinn's caller ID displayed "LifestyleresortsGlobbalexchangevacationclub.c[om]," and indicated the call was

from (817) 937-4729. Again, on information and belief, this number was spoofed and was not Defendants' telephone number. The caller indicated he was calling from "Lifestyle Resorts of Embassy Suites." When Pinn asked whether the caller was from GEVC, the caller they were affiliated with GEVC. The caller again confirmed GEVC's website address.

33.    On June 25, 2021, Pinn sent an email to Defendants complaining that they had violated the TCPA, cancelling the sales presentation, terminating any business relationship, and demanding that Defendants provide their written Do Not Call policy. Defendants did not respond to this email and never provided their written Do Not Call policy.

34.    **Defendants' 2022 Call:** On or about March 30, 2022, Pinn received a third call from Defendants. Pinn's caller ID displayed "GEVC/Royal," and indicated the call was from (817) 201-1655. Again, on information and belief, this number was spoofed and was not Defendants' telephone number. The caller identified herself as "Mary" from "Royal Vacation." "Mary" indicated that Pinn had won a free vacation, and would need to go to Royal Vacation's office to pick up a gift claim card. "Mary" asked Pinn some questions about herself, then transferred the call to a manager who identified herself as "Linda" from GEVC. "Linda" explained that different vacations had different sponsors, such as "Royal Vacations." "Linda" then identified Defendants' website (again, "globalexchangevacation.com").

35.    On March 30, 2022, Pinn sent another email to Defendants complaining that they had again violated the TCPA, and indicated that her telephone number should be on Defendants' own Do Not Call list. Defendants eventually responded that they were investigating Pinn's claims, but did not take any other action to correct their TCPA violations.

36.    Defendants' telemarketing inflicted actual injury on Pinn by invading her privacy. Defendants caused Pinn the harm inherent in unsolicited, harassing,

and deceptive telemarketing calls (including invasion of privacy, emotional distress, aggravation, nuisance, loss of use of her telephone, wear and tear to her cell phone battery, depleted charge, wasted time, and attention from her daily activities) alleged above.

## Class Certification Allegations

37.     **NDNC Class:** Plaintiff brings this Complaint against Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following National Do-Not-Call ("NDNC") Class:

> All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of this complaint through the date the Court certifies the class, while such number was registered with the National Do-Not-Call Registry.

Excluded from the NDNC Class are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise and amend these class definitions based on facts learned during discovery.

38.     **IDNC Class:** Plaintiff brings this Complaint against Defendants, pursuant to Federal Rule of Civil Procedure 23, on behalf of herself and the following internal Do-Not-Call ("IDNC") Class:

> All persons in the United States who received two or more telemarketing calls to their cellular or residential telephone numbers within any 12-month period by or on behalf of Defendants, from four years prior to the date of this complaint through the date the Court certifies the class, during which time Defendants had not instituted or maintained the procedures or minimum standards required under 47 C.F.R. § 64.1200(d).

Excluded from the IDNC Class are any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants, and

Defendants' owners, affiliates, agents, legal representatives, predecessors, successors, assigns, and employees. Also excluded are the judge and staff to whom this case is assigned, and any member of the judge's immediate family. Plaintiff reserves the right to revise and amend these class definitions based on facts learned during discovery.

39. **Numerosity:** The exact number of members of each Class is unknown and is not available to Plaintiff at this time, but such information is readily ascertainable by Defendants and their agents' records. Each Class is so numerous that joinder of all members is impractical. Plaintiff alleges that there are at least forty members of each Class.

40. **Commonality:** Plaintiffs and the members of each Class share common experiences receiving calls by or on behalf of Defendants. They received multiple, incessant, uninvited calls to their residential telephone numbers for the purposes of marketing Defendants' timeshares.

41. **Predominance:** In addition, common questions of fact and law exist as to all members of each Class and predominate over the questions affecting only individual members of the Classes. Identification of the individuals who qualify as a member of each Class will be sufficient to establish liability to the class member. The predominant common questions include:

a. Whether Defendants and/or their agents made telemarketing calls to the residential telephone numbers of NDNC Class members while those numbers were registered with the National Do-Not-Call Registry;

b. Whether Defendants and/or their agents made telemarketing calls to the residential telephone numbers of IDNC Class members while Defendants had failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d) for making telemarketing calls;

c. Whether Defendants are directly or vicariously liable for calls by their telemarketers;

d. Whether Defendants and/or their agents had legally effective consent to place telemarketing calls to Class members;

e.     Whether Plaintiffs and Class members are entitled to damages, including whether Defendants' violations were performed willfully or knowingly such that Plaintiffs and Class members are entitled to treble damages;

f.     Whether Plaintiff and Class members are entitled to injunctive relief and attorneys' fees and costs.

42.     **Typicality:** Plaintiff's claims are typical of the claims of the other Class members. Plaintiff is not different in any relevant way from any other Class members, and the relief they seek is common to the Class.

43.     **Adequate Representation:** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class: Plaintiff's interests do not conflict with the interests of the other Class members. Plaintiff has retained counsel competent and experienced in complex class actions, including class actions arising under the TCPA and other consumer protection laws, and they intend to prosecute this action vigorously.

44.     **Predominance and Superiority:** The Class alleged in this Complaint is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual Class member will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. It would be virtually impossible for Class members to individually obtain effective relief from Defendants' misconduct. Even if Class members themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, class actions present far fewer management difficulties and provide the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

45.    **Generally Applicable Policies:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the classes, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to each class a whole. The policies of the Defendants challenged herein apply and affect members of each class uniformly, and Plaintiffs' challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiffs.

46.    **Injunctive Relief is Appropriate:** Based on information and belief, Defendants continue to engage in the improper practices discussed above. Injunctive relief is necessary and appropriate to enjoin Defendants' conduct and to prevent irreparable harm to Plaintiffs and Class members for which they have no adequate remedy at law.

### FIRST CAUSE OF ACTION
**(Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(c) Against Defendants By Plaintiff, Individually, and on Behalf of the NDNC Class)**

47.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

48.    Defendants are "persons" as defined by 47 U.S.C. § 153(39).

49.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action for injunctive relief and statutory damages of $500 per violation. 47 U.S.C. § 227(c)(5). Where "the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection," it "may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount [otherwise] available . . ." *Id*.

50.    The FCC's TCPA regulation provides that "[n]o person or entity shall initiate any telephone solicitation" to a "residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of

persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2). This prohibition also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

51.     On information and belief, Defendants and/or their agents routinely make outgoing calls to residential and cellular telephones in the regular course of their telemarketing campaigns alleged above. Defendants violated 47 C.F.R. § 64.1200(c) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other NDNC Class members. Defendants violated 47 C.F.R. § 64.1200(c).

52.     Defendants' violations are willful because Defendants knew that Plaintiffs and NDNC Class members had not given prior express consent to receive telemarketing calls or other telephone numbers on the Do Not Call List, and Defendants nonetheless called such telephone numbers. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by the Plaintiffs and the other Class members.

53.     Plaintiff Kelly Pinn, on her own behalf, and on behalf of the other NDNC Class members, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants.

54.     Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff and the Class are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action.

### SECOND CAUSE OF ACTION
**(Violation of 47 U.S.C. § 227(c)(5) and/or 47 C.F.R. § 64.1200(d) Against Defendants By Plaintiff, Individually, and on Behalf of the IDNC Class)**

55.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

56.     Again, the TCPA provides that any "person who has received more

than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action for injunctive relief and statutory damages of $500 per violation, and may treble damages for willful or knowing violations. 47 U.S.C. § 227(c)(5).

57.   The FCC's TCPA regulation provides that

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1)   Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2)   Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3)   Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made [and] must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. . . .
>
> (4)   Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

47 C.F.R. § 64.1200(d). Again, this prohibition also applies to wireless telephone numbers. 47 C.F.R. § 64.1200(e).

58.   Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(1) by making telemarketing calls while they did not have a written policy for maintaining a do-not-call list, and/or such policy was not available upon demand. Plaintiff requested Defendants' written policy for maintaining a do-not-call list on

June 25, 2021, and Defendants never provided one. Defendants either do not have a written policy for maintaining a do-not-call list, or do not provide it on demand.

59.    Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(3) by making telemarketing calls while they failed to honor consumer requests not to receive calls from or on behalf of Defendants, and/or did not record such requests. Plaintiff received a call from Defendants on June 21, 2021, told Defendants not to call her again on June 25, 2021, and Defendants called Pinn again on March 30, 2022. Defendants fail to honor consumer requests not to receive calls from or on behalf of Defendants.

60.    On information and belief, and in addition or the alternative, Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(2) by making telemarketing calls while they had failed to train their personnel in the existence and use of their do-not-call list. Plaintiff alleges various violations of 47 C.F.R. § 64.1200(d) above. To the extent Defendants claim they instituted and maintained procedures and minimum standards prescribed by 47 C.F.R. § 64.1200(d), but that their personnel made a mistake implementing their do-not-call list, Defendants failed to adequately train their personnel.

61.    Defendants and/or their agents violated 47 C.F.R. § 64.1200(d)(4) by making telephone calls for telemarketing purposes which concealed the name of the individual caller, Defendants' names, and a telephone number at which Defendants could be contacted. Specifically, Defendants' spoofed the outgoing telephone numbers used to call IDNC Class members, and/or their telemarketers fail to identify Defendants until after the telemarketer assesses the call recipients' interest in Defendants' vacation packages.

62.    Defendants violated 47 C.F.R. § 64.1200(d) by initiating two or more telephone solicitations to wireless and wireline residential telephone subscribers such as Plaintiff and the other IDNC Class members while failing to institute or maintain procedures and minimum standards required under 47 C.F.R. §

64.1200(d).

63.     Defendants' violations are willful because Defendants knew that the TCPA applied to their conduct, and knew that they failed to institute or maintain procedures and minimum standards required under 47 C.F.R. § 64.1200(d)(1) in the manner alleged above, but still engaged in telemarketing. Because Defendants' violations were willful, the Court should treble the amount of statutory damages recoverable by the Plaintiffs and the other Class members.

64.     Plaintiff Kelly Pinn, on her own behalf, and on behalf of the other Class members, seeks to recover statutory damages (including treble damages for willful violation of the TCPA), as well as injunctive and equitable relief under 47 U.S.C. § 227(c)(5) against Defendants.

65.     Plaintiff brings this action as a private attorney general, and to vindicate and enforce an important right affecting the public interest. Plaintiff and the Class are therefore entitled to an award of attorneys' fees under Code of Civil Procedure section 1021.5 for bringing this action

WHEREFORE, Plaintiff Kelly Pinn prays that the Court enter judgment and orders in their favor and against Defendants Global Exchange Vacation Club and Global Exchange Development Corp., and Does 1 to 10 as follows:

a.     An order certifying the NDNC Class, directing that this case proceed as a class action, and appointing Plaintiff and her counsel to represent the NDNC Class;

b.     An order certifying the IDNC Class, directing that this case proceed as a class action, and appointing Plaintiff and her counsel to represent the IDNC Class;

c.     Statutory damages as provided under 47 U.S.C. § 227(c)(5) against Defendants in favor of Plaintiff and the NDNC and IDNC Classes, including trebled damages for willful and knowing violations;

c.     Injunctive relief under 47 U.S.C. § 227(b)(3) against Defendants in favor of Plaintiff and the NDNC and IDNC Classes;

d.     An award of attorneys' fees and costs under California Code of Civil Procedure § 1021.5 in favor of Plaintiff and the NDNC and IDNC Classes;

e. Such other and further relief as this Court may deem appropriate.

Dated: October 24, 2022          By: s/Ethan Preston

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Kelly Pinn, on her own behalf and behalf of all others similarly situated*

# JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury of all issues so triable.

Dated: October 24, 2022          By: s/Ethan Preston

Ethan Preston (263295)
ep@eplaw.us
PRESTON LAW OFFICES
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
Telephone: (972) 564-8340
Facsimile: (866) 509-1197

*Attorneys for Plaintiff Kelly Pinn, on her own behalf and behalf of all others similarly situated*

Jury Demand